We will hear argument next in number 241363, Delfasco against Secretary of the Army. May I please report? In today's argument, I'm going to address argument three of Delfasco's brief. The board improperly refused to consider evidence of the party's prior conduct, as I believe that's dispositive. Why does that matter if the contract itself is unambiguous? Well, first, I think there's two reasons for that. First, I do think the contract is ambiguous with regard to Steele. So I would take that position, but secondly… Why? I mean, Steele has a dictionary definition that it has up to a certain percent of something. If we apply that dictionary definition, then it's unambiguous. Well, almost everything has a dictionary definition. And that's the way we often do contract. Yeah, but in this party, there is a course of conduct that getting to the… You can't override plain language in the contract, can you? Well, the parties are allowed to be the lexicographers of their own contract. So if the parties, at the time they entered into the contract, both believed that the bomb bodies were made out of Steele and they put that the EPA clause should be based on Steele because they believed the bomb bodies were made out of Steele, then our intent is to enforce it in accord with the… So if the bomb bodies had been made out of Steele, you would get the EPA clause, but they're not. Right, but I believe the interpretation by the parties was that both parties believed that the bomb bodies, that they were made out of Steele. I think the definition of Steele is ambiguous. You can look it up and you've got even different definitions in the dictionary that the board looked at. Sometimes it's 1.5 percent, it becomes Steele. At another point, it's 1.7 percent, it becomes Steele. You can look at your card and say it's made out of Steele, but is it really? Is it some of that gray iron? Is the difference in 1.5 percent versus 1.7 percent? No, no, there is. I may have… Well, the board appeared to be relying on these as being dispositive. What I mean is, let me be clear, is the difference between these different dictionary definitions, is that going to make a difference in whether gray iron is included within the broad term Steele? No, I don't think it does. I didn't think it did either. No. Okay. So at any rate, my position is that it is ambiguous, that any word can be ambiguous, it has different meanings. I know we get into the whole issue if we go into part A about… Steele is not iron. I mean, your whole point about the parties understood that the bonds were going to be made out of Steele may have formed the basis for some kind of mistake in contract and that there was no meeting of the minds or something like that, but it doesn't matter as to whether an EPA clause only for Steele applies. Well, I think there was a meeting of the minds because I think both parties believe… Both parties agree that you got an EPA clause for Steele. Both parties agree that you have an EPA clause for Steele, but I think it was also both parties' interpretation at the time of contracting that the bond bodies were made out of Steele. Well, that's a fact. They're either made out of Steele or they're not. It's not a question of they thought that iron was Steele. If they thought that the bond bodies were going to be made out of iron and should get an EPA clause, they would have written that, wouldn't they? They didn't write that the bond bodies, that the EPA clause is based on iron because of the fact that they interpreted Steele to encompass the bond bodies. They didn't interpret Steele to encompass iron, though. Well, that's because they believed the bond bodies were made out of Steele. That has nothing to do with the definition of Steele. That has to do with what the parties thought that the bond bodies were going to be made out of. If you made your bond bodies out of Steele here, then you would have gotten the EPA clause.  But the drawings going back years… Let me just ask you this. If we determine, looking at the plain language of the contract, that Steele and iron are not the same thing and that the EPA clause only applies to Steele, then what else is there in this case? Well, I think that, as this Court said, what the object is is the fundamental precept of common law that the intention of the parties to a contract controls its interpretation. And that's in Beta Systems, which we cite in our brief. And the first place we look to that is the plain language of the contract. Correct. What is the evidence that you want to highlight for the proposition that the parties understood that the product being sold and purchased was made of Steele? Well, there is a course of conduct, beginning with the contract, running through up until… Beginning with the signing of the contract. Beginning with the signing of the contract, up until the time of summary judgment. It would be my argument that the course of conduct in that time… So what are the elements in that course? There are discussions between the parties. There are two contracting officers' final decisions where the contracting officer listed all the reasons why it should deny the claim. In the papers given to us, there is a series of invoices that say gray iron, gray iron, gray iron.  Who saw those? Those were seen by the contracting officer. Those were submitted to the contracting officer with the claim. How do we know that? That's the question that I wasn't able to answer on my own. Yes, I believe it's undisputed that the invoices were submitted with the claim. And I think you mentioned in one of your briefs that some of those invoices do say they're gray iron. Submitted with what? With the claim. It was back-up to the claim. The invoices were submitted as back-up to the claim for the equitable adjustment. The claim made in 2020? Yes. And the contract was in the spring of 2016? 2016, it was made. The EPA clause says you have 60 days from an increase to make the request. That's much less than four years. Well, that's notice that has to be given, first of all. But the notice, the board never reached the notice issue below. That was raised? The issue was raised by the government, but the board did not reach it. Right. But in any event, there's no reason to think that during the four years of either prior to the contract being signed or in the four years before your, what, April 2020 claim was submitted, that the government had any, what, reason to think that this was gray iron? The evidence is very, very sparse up until the claim is submitted. Right. However, I will say, I believe the fact that they even selected steel for the EPA clause is an indication that they believe the bomb bodies were made out of steel. And the reason for that is, as the government concedes, the steel portions of this bomb you create, the steel portions are a very small portion. They're the fins and a little cone. The bomb, the government concedes that the major part of the bomb body is what it now is, is the body, which it's now saying is gray iron. It, since the only difference between these two things are, are the molecules, how many molecules of carbon are in it, they would not have made a small part of the bomb to be subject to the EPA clause when the whole bomb is essentially made out of the same thing, except for these few molecules of carbon. That makes no sense to me. These are not essentially the same thing. Definitionally, they're different. And if steel was more volatile and they understood that part of this would be steel, then they can give you an EPA clause for that. If the other part is not so. I mean, you seem to think that the parties agree that this entire bomb would be made out of steel. If that's the case, why didn't you make it out of steel? If that's what you thought you were going to make it out of. Well, they made it in accordance with the drawings, and the drawings do say gray iron. Well, then it's absolutely nearly frivolous of you to argue that you both thought that the bomb bodies were going to be made of steel when the specifications didn't say steel. They said gray iron. Well, I think you've got a difference between technical people who are dealing with the drawings and the specifications and the people who are entering into the contract. Just to make sure, I understand. Your view is because the contracting officer did not immediately say, hey, you can't have a price adjustment under this clause because you've got gray iron as your bomb body. Because that point was not made immediately, and instead it wasn't made until later on summary judgment, that demonstrates, in your view, the government's position or concession or understanding that the word steel, as used in the contract, includes gray iron, right? That is your argument. Not by itself, but that is one part of it. Your other argument is that any other interpretation doesn't make sense Well, that's a small part, and I agree. It's a small part about the bomb bodies. But what you have here is you have a course of conduct over many months where the parties were discussing the claim. Does the specification tell you precisely how to construct these bombs? Fairly. And some of it is gray iron and some of it is steel. Yes. And the specification is incorporated into the contract. Yes. So the contracting parties know at the time that there's gray iron and there's steel.  Well, I don't know that the parties. Go ahead. Thank you. And they agreed to an EPA clause that only covered steel. The parties did agree to an EPA clause that states steel, yes. But I would also point out that the government in this case made an admission in its answer that these bomb bodies are made out of steel. They're partly made out of steel. Everybody agrees. No, no, no, no. They said the bomb bodies are made out of steel. And let me find that quotation. Well, that's just not true. Are you saying that that's some kind of estoppel? No, I'm saying it's an admission at the time of what the government believed. I mean, they put as an affirmative averment of fact in their answer. I don't understand how that can overcome the clear language of the contract which incorporates the specifications that distinguishes between gray iron and steel. Well, it's a judicial admission, I think, that at least it shows what their belief was at the time they wrote it. At the time they wrote it, I think there's a course of conduct here that shows that everybody believed these bomb bodies were steel from the time the issue arose until the motion for summary judgment, including an admission by the government in its answer that it's steel. How could they possibly have believed they were steel when the specification showed you that the bulk of them were made by gray iron? Well, the... Are you saying they meant that gray iron and steel were the same thing? I don't think anybody truly knew the difference, to be perfectly honest, at the time. You know, these drawings have been here for a significant amount of time, and we have a course of conduct that I think goes in one direction and one direction only. So I guess the argument comes down to whether or not you believe steel can be an ambiguous term because if you don't feel it's an ambiguous term, perhaps I can see that at least some people don't believe you can get into the issue. But I think if the parties believe at the time they enter into the contract... But even if, let's say, assuming for a minute that it is ambiguous, right? Right. In order to be able to rely on trade usage in the documents you want to, don't you have to show that you had an understanding of steel that included gray iron and were on summary judgment and there was no evidence that was presented, so there's no genuine issue of material fact, that there's no evidence that you thought steel meant something that included gray iron? So, end of story. Well, I think you're confusing here perhaps the trade practice and the extrinsic evidence with the party's course of conduct. You're right that to enter the extrinsic evidence, you would have to show that you had the intent at the time you entered into the contract to read it in that way. That's true. Why isn't course of conduct extrinsic evidence? Well, it's not like extrinsic evidence in the term that it's used in these cases where you've got dictionaries versus trade usage. The conduct of the parties is just plain evidence. If I come in and I say that as they get here, the bomb body is made up... What law do you have to support that? What? That the course of conduct of the parties is not extrinsic evidence but is instead something that's intrinsic and part of the contract interpretation. I do not have a citation for that. I think I need a citation for that.  Would you like me to see if I can find something and submit it to the court now afterwards or do you just think you need that and it's not there? I think that if you think you can find something, you can submit it. I take it you think that doesn't exist then. I don't think it does. Thank you. You are into your rebuttal time. Pardon me? You're into your rebuttal time now. I'll step down immediately then. Good morning and may it please the court. The court should affirm the board's decision here because the contract unambiguously permits the contract to receive an adjustment for a price of steel only. Do you know what was going on here when they didn't immediately say what you're asking for is not steel, it's iron. It did seem like it went fairly along in the claims process and even at the board before we got this legal argument. Your Honor, the government appears to have been focused on the other requirements under the contract, that being notice, additionally, whether or not the price of fluctuation surpassed 3% of the contract value. And that's at page 4, footnote 3 of our brief before we talk about the other bases that the government moved for summary judgment. The board did not reach those bases and had no reason to reach them given the plain language of the contract at issue here entitles the contractor to receive an adjustment for the price of steel only. And there is no dispute in this case that the contractor here sought an adjustment for the price of a different material, that being gray iron. And the appellant's brief at note 1. Is there any doctrine that would allow the board to find waiver if the government didn't make these objections during the claims process? No, Your Honor. Finding a waiver during the claims process would be, I think, inconsistent with this court's precedent in Wilner, for example, where the findings... Did you say Wilner? Wilner, W-I-L-N-E-R, which the board does cite in the opinion, I believe, in Appendix 7 for the proposition that to the extent the appellant seeks to rely on findings of the contracting officer, either explicit or implicit, that would be at odds with this court's precedent in Wilner, the en banc case there. So instead it's characterized as being a course of conduct. And so that's what I understand it to be. I understand it to be more of a course of conduct. So my question is, are you... My last question about can a court look at the course of conduct of the parties as an intrinsic evidence to understand the meaning of a term in a contract? Do you know the answer to that question? I do not have a case citation for the answer. I don't believe that a case exists that supports appellant's counsel's position this morning. They did not make that argument in the briefing before this court, but rather the label this morning on a course of conduct relates solely to evidence that arose after the dispute and that the board considered as being not probative of contractual intent because it arose after the dispute, that being both the answer by the government and the contracting officer's decisions that were appealed to the board. So that distinction about post-dispute and pre-dispute feels like you're turning it on its head. When somebody says something against their interest after the dispute, that's one thing, and it's even more powerful than if they had said it before the dispute. The usual context in which that distinction comes up is when somebody says something after the dispute that's in their self-interest, and you say, well, that really can't matter. It seems very peculiar to say that the government, having gone along through the contracting officer process and then for a good period of the actual litigation after it was out of the agency and into the board, without having said, hey, wait a second, what you're asking us to pay more for isn't steel at all. Your Honor, again, the government appears to have been focused on the other requirements of the clause. But the issue is with the board's reliance on timing, not so much as to whether it comes in as extrinsic evidence or not. I mean, if it's extrinsic evidence, it doesn't come in if the term is unambiguous, right? Without a showing of reliance on it before. Right. But if it's ambiguous, we could look at course of dealings, right? And if the course of dealings had said, when the government got the claim, said, well, we agree what you're trying to cover comes under the steel EPA clause, but you didn't meet the notice requirements, then we might see that first part as a concession. I understand your point is they didn't say that at all. They just rejected it on the timing. They didn't address whether it was steel or iron.  That's a different case. But hypothetically, if the answer on that claim had said, you've met all the requirements to show you're entitled to this EPA clause, but you filed it too late, then that would seem, and assuming the term was ambiguous, that would seem to be evidence that the government thought that it was covered by the EPA clause, right? The appellant would still need to establish reasonable reliance on that competing interpretation even to get that type of extrinsic or answer-based evidence. Sure, but you only get there. I mean, you only get there, first of all, if it's ambiguous. And then if it's ambiguous, there must have been some suggestion that it could be interpreted in both ways. The hypothetical, I think, assumes that. I'm just worried the board put down a categorical line about timeliness, and nothing after contract formation is relevant at all. And I don't think that that's the case. I don't understand to the extent that the board addressed the pre-dispute, post-dispute dichotomy. It was cursory in the opinion, and it did not control the analysis, given the failure of a showing of reasonable reliance by the contractor on the competing interpretation that the term steel in the contract encompasses gray iron. So that just was not a controlling part of the board's opinion in the case. By the way, just a timing question. So the claim here was filed in April of 2020. Was the contract... Twenty-two. What? Twenty-two, I believe. Oh, I thought it was 2020. Anyway... It was first raised in April of 2020 and then filed in 2020. I'm sorry. I'm sorry. Was the contract over? Or was it continuing, performance continuing at the time? Your Honor, I don't believe that that issue was briefed, but I believe the contract had been completed by then because it was awarded in 2016, and it's normally five years. Okay. The reason I ask this is that it might well be that there was some reliance in the continuing performance of the contract if there had been a request and the government never said, hey, wait a second, this isn't steel. Understood. Again, because there's no ambiguity in the term steel in the contract and there's no dispute as the appellant recognizes that page three, note one of its brief, that it sought an adjustment for something other than steel, that being gray iron, the court should affirm the board's decision. Thank you. Okay. Thank you. Very quickly, just a couple of points. First, the board relies on Parsons, ASBCK's Parsons, which it cites Max Drill, which is a case of this court, and it cites it for the proposition that the party's interpretation of the contract during performance before a dispute arose is demonstrative of their contractual intent, and I don't dispute that. However, if you look at Max Drill, what it actually says is the interpretation of a contract by the parties to it before the contract becomes the subject of controversy is deemed by the courts to be a break if not controlling weight. But here we don't have any evidence of what happened before the dispute arose as the board defines it. So all the evidence is after the dispute arose. But even if we don't give that controlling weight, even if we give it less weight, it all goes Delfasco's way. So Delfasco has shown by preponderance that all the evidence that exists goes its way. Relating to extrinsic evidence, and along the same lines as I just stated, even if you decide that the course of conduct is a kind of extrinsic evidence you can't consider, you can consider that evidence if there is some evidence that that's what Delfasco relied on at the time it entered into the contract. Now, Delfasco did not put in an affidavit about how it interpreted this when it entered into the contract. There is nothing at 2016 when this contract was entered into. But Delfasco has shown through its course of conduct that it interpreted in this manner. I think Delfasco on summary judgment is entitled, when there's no conflicting evidence at all, when there's a course of conduct indicating that it believed at the time of contracting that it should be interpreted that manner, and there's no conflicting evidence at all, although it's not as strong as if it could have put in an affidavit or something, it is the only evidence in the record. So I would say that shows by preponderance of the evidence that they did rely on it, and they're entitled on summary judgment to an inference that if that's what their entire course of conduct shows they believed it went in one way, they're entitled to an inference that that's how they believed at the time of contracting, and therefore that should be considered. Thank you. Thank you. Thanks to both counsel. The case is submitted. And that ends our session for the day.